## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

COMMODITY FUTURES
TRADING COMMISSION,

       Plaintiff,

v.

ALI R. BAZZI AND WELTHER
OAKS LLC,

       Defendants.

Case No. 21-cv-11909
Hon. Matthew F. Leitman

_____/

## ORDER FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER STATUTORY AND EQUITABLE RELIEF

On August 17, 2021, the Commodity Futures Trading Commission ("Commission" or "Plaintiff") filed a Complaint charging Defendants Ali R. Bazzi and Welther Oaks LLC ("Bazzi" and "Welther Oaks" or "Defendants") with violating Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A)-(C), 4k(2), 4m(1), and 4o(1)(A)-(B) of the Commodity Exchange Act ("the Act"), 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-(C), 6k(2), 6m(1), 6o(1)(A)-(B), and Commission Regulations ("Regulations") 5.2(b)(1)-(3) and 5.3(a)(2)(i)-(ii), 17 C.F.R. §§ 5.2(b)(1)-(3), 5.3(a)(2)(i)-(ii) (2021).

On August 24, 2021, Defendants were properly served with the summons and Complaint pursuant to Rule 4(f)(2)(C)(i) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") by process server.

Defendants have failed to appear or answer the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1). Accordingly, the Commission filed motions for entry of a clerk's default against Defendants and on November 3, 2021, the Clerk of this Court entered a default against Defendants.

The Commission has moved this Court to grant final judgment by default against Defendants, order permanent injunctive relief, and impose a civil monetary penalty.

The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its motion, the record in this case, and the Court being otherwise advised in the premises, it is hereby:

ORDERED that the Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Defendants is GRANTED. Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief

("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. §§ 13a-1, 13a-2 (2021), as set forth herein.

## I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.     Findings of Fact

**The Parties**

1. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1–26, and the Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2021).

2. Defendant **Ali R. Bazzi** is a resident of Dearborn, Michigan.  Bazzi is the Chief Executive Officer and sole owner of Defendant Welther Oaks.  Bazzi has never been registered with the Commission in any capacity.

3. Defendant **Welther Oaks LLC** was incorporated in Michigan on March 27, 2018.  Welther Oaks' address was listed as either 6 Parklane Blvd., Dearborn, Michigan or 400 Renaissance Center Suite 2600, Detroit, Michigan. Welther Oaks has never been registered with the Commission in any capacity.

**Defendants' Fraudulent Scheme**

4. Beginning March 2018, Defendants Bazzi and Welther Oaks, through Bazzi, fraudulently solicited at least $540,047 from at least thirty-five Pool

Participants who were not eligible contract participants ("ECP")[1], for the purpose of trading off-exchange leveraged or margined forex contracts on their behalf in a commodity pool that was not itself an ECP.

5. Bazzi solicited prospective Pool Participants through telephone calls, emails, text messages, and word of mouth, seeking out individuals who would agree to let Bazzi trade forex on their behalf through his company, Welther Oaks.

6. In March of 2018, Bazzi opened his first business checking account at Fifth-Third Bank in the name of Welther Oaks with an account number ending in 3494 (the "3494 account"). On the application to open the account, Bazzi listed himself as the sole owner of and having complete control of Welther Oaks.

7. Then in July of 2018, Bazzi opened a second business checking account in the name of Welther Oaks at Bank of America with an account number ending in 3242 (the "3242 account"). On the application to open the account, Bazzi again listed himself as the sole owner of and the owner with control of the entity.

8. In July of 2019, Bazzi opened a third business checking account in the name of Welther Oaks at Bank of America with an account number ending in 5461

---

[1] An ECP is defined by the CEA, in relevant part, as "an individual who has amounts invested on a discretionary basis, the aggregate of which is in excess of—(I) $10,000,000; or (II) $5,000,000 and who enters into the agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." 7 U.S.C. § 1a(18)(xi).

(the "5461 account").  On the application to open the account, Bazzi listed himself as the sole owner of and the owner with control of the entity.

9.  Bazzi asked prospective pool participants to wire funds into one of the three Welther Oaks bank accounts. Defendants also deposited checks received from pool participants into these accounts.

10. In October of 2018, Bazzi opened a retail forex account in his own name at a retail forex dealer ("RFED") and funded it with $5,000.  Bazzi stated that no other person had a financial interest in the account on the account application.  The account was open for approximately fourteen days, during which time it lost $615.  Bazzi subsequently closed the account on November 6, 2018, and transferred the remaining balance of $4,385 back to one of Welther Oaks' bank accounts.

11.  Over a year later, in December of 2019, Bazzi opened a second retail forex account in the name of Welther Oaks LLC with another RFED.  Bazzi represented on the account application that he was trading his own funds, and no one else held a financial interest in the account.  Bazzi made two deposits into the account, totaling $70,000.  The account was open for approximately 34 days, engaged in sixty-six trades and sustained net losses of approximately $973.  Bazzi subsequently closed the account on January 14, 2020, and transferred the remaining balance of $68,889 out of the account to a Welther Oaks bank account.

12.  These were the only two forex accounts Bazzi and Welther Oaks opened and traded on behalf of Welther Oak's customers.

### **Bazzi and Welther Oaks Fraudulently Solicited Pool Participants**

13.  Bazzi and Welther Oaks falsely and fraudulently represented to Pool Participants that:  Defendants had made large profits for themselves and Pool Participants from trading forex; Defendants would trade forex with the funds deposited by Pool Participants; Pool Participants would realize guaranteed profits as high as 15% per month on their funds without losses; and upon request, Pool Participants could withdraw the funds at any time.

14.  Additionally, Bazzi and Welther Oaks also omitted to tell Pool Participants material information, including failing to disclose to Pool Participants that the majority of the funds received were not placed in trading accounts and Defendants did no trading at all during most of the Relevant Period; that the account statements issued by Defendants to several Pool Participants supposedly reflecting forex trading and profits were false; and that Defendants misappropriated Pool Participants' funds for their own use.

15.  These statements were all false or contained fraudulent omissions because Defendants performed little if any forex trading on behalf of Pool Participants with the funds they received, never earned any profits on the funds they did trade, provided false account statements to Pool Participants showing profits,

never paid out profits to most Pool Participants, and ultimately refused Pool Participants' requests to return their money.

16.  Instead, Defendants intentionally misappropriated Pool Participants' funds for Defendants' own benefit and personal use.

17.  At the direction of Defendants, several Pool Participants entered into a written "Trading Agreement" with Welther Oaks.  Bazzi provided the Trading Agreement to Pool Participants by email or through other means or instrumentalities of interstate commerce.  Some of the agreements contained the following fraudulent representation, "Welther Oaks will Honor any withdrawal requests made by the investor."

18. To conceal from Pool Participants that their funds had been misappropriated and lull Pool Participants into leaving their funds in control of Welther Oaks and Bazzi, Bazzi advised some Pool Participants, both orally and in written account statements, that their funds were making profits, though in reality they were not.

19.  For example, one Welther Oaks pool participant received statements from Defendants showing that forex trades placed in his account between January 22, 2019 and May 10, 2019 had earned profits totaling $89,447, when in fact Bazzi had done no forex trading at all during that same time period.

20. Additionally, Defendants issued statements to at least six pool participants reflecting that Defendants had earned over $242,000 in profits for those participants between May 2018 and July 2019.  In fact, Bazzi only had an active forex account for about one month of that timespan, during which time he lost $972.

21. Defendants made the misrepresentations and omissions alleged herein willfully or with reckless disregard for the truth and by use of the wires or other means or instrumentalities of interstate commerce, including the wires and U.S. Mail.

### Defendants Misappropriated Pool Participants' Funds

22. Bazzi instructed Pool Participants either to wire their funds to one of the three business checking accounts in the name of Welther Oaks or, if they wished to submit a check or cash, to send the funds to Welther Oak's business address.

23. Most, if not all, funds transmitted to Defendants by Pool Participants during the Relevant Period were deposited into one of the three Welther Oaks bank accounts (either by wire transfers sent directly from Pool Participants, or by Defendants depositing checks or cash received from Pool Participants).  Bazzi was the sole signatory on all three Welther Oaks bank accounts.

24. Rather than using Pool Participants' funds for trading forex as Defendants had represented they would, Defendants instead used those Pool Participant funds for Bazzi's personal benefit.  Specifically, Defendants used at least approximately

$439,644 for, among other things, automobiles, jewelry, retail purchases, meals, entertainment, travel, and bank withdrawals for cash expenses.

25.  One example occurred on March 9, 2020, when a Pool Participant made a $35,000 deposit by wire transfer to one of the Welther Oaks' bank accounts.  None of this Pool Participant's deposit was used to trade forex.  Instead, Bazzi used this money he received to pay for personal living expenses such as food, gym memberships, gas and utilities, and retail purchases, including clothing, auto accessories, and over $13,000 in jewelry.

26.  To date, despite repeated requests to Bazzi for the return of their funds, most Pool Participants have not received their funds back from the Defendants. Defendants misappropriated Pool Participants' funds by use of the mails and wires, both instrumentalities of interstate commerce.

### Welther Oaks Acted as an Unregistered CPO, and Bazzi Acted as an Unregistered AP of a CPO

27.  During the Relevant Period, Defendant Welther Oaks, through Defendant Bazzi, acted by operating or soliciting funds from individuals who were not ECPs for a forex pool that was not an ECP and that engaged in retail forex transactions.

28. During the Relevant Period, Bazzi acted in a capacity requiring registration as an AP of a CPO by soliciting Pool Participants and prospective Pool Participants for participation in a forex pool, while associated with Welther Oaks as a partner, officer, employee, or similar agent.

29.  During the Relevant Period, Welther Oaks was not registered with the Commission as a CPO, and Bazzi was not registered with the Commission as an AP of a CPO.

### Bazzi was a Controlling Person of, and Acted as an Agent for Welther Oaks

30.  Defendant Bazzi exercised both operational and financial control over Welther Oaks.  Bazzi was the founder, Chief Executive Officer and sole owner of Welther Oaks.  Bazzi told Pool Participants that he was responsible for the trading at Welther Oaks and was generally the sole source of information for Pool Participants regarding Welther Oaks and the status of their funds.  Bazzi exercised sole control over the Welther Oaks bank accounts, into which Pool Participants transferred funds for the purpose of trading forex.

31.  Through his solicitation of prospective and existing Pool Participants and his continued communication with Pool Participants regarding their purported trading success on behalf of Welther Oaks, Bazzi acted as both Welther Oaks' employee and its agent.

**B.  Conclusions of Law**

**1.  Jurisdiction and Venue**

32.  This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any

act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

33. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because the Defendants reside or transact business in this jurisdiction and the acts and practices in violation of the Act and Regulations occurred, are occurring or are about to occur within this District, among other places.

### 2. Fraud by Making False Misrepresentations and Omissions

34. Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), makes it unlawful "for any person, in or in connection with any order to make, or the making of, any contract for sale of any commodity for future delivery . . . that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market–(A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of

agency performed, with respect to an order or contract for or, in the case of paragraph (2), with the other person."

35.  Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv), provides that 7 U.S.C. § 6b(a)(2)(A)-(C) of the Act also applies to the forex transactions, agreements, or contracts offered by Defendants "as if" they were a contract of sale of a commodity for future delivery.

36.  Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2021), makes it unlawful "for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:  (1) [t]o cheat or defraud or attempt to cheat or defraud any person; (2) [w]illfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3) [w]illfully to deceive or attempt to deceive any person by any means whatsoever."

37.  By the conduct described in paragraphs 1 through 31 above, Defendants cheated and defrauded, or attempted to cheat and defraud, willfully made or caused to be made false reports and statements to Welther Oaks pool participants, and attempted to deceive Welther Oaks pool participant customers by, among other things, knowingly or recklessly misrepresenting to Pool Participants that: Defendants had made large profits for themselves and Pool Participants from trading forex; Defendants would trade forex with the funds deposited by Pool Participants;

Pool Participants would realize guaranteed profits as high as 15% per month on their funds without losses; and upon request, Pool Participants could withdraw the funds at any time; as well as failing to disclose to Pool Participants that the majority of the funds received were not placed in trading accounts; that Defendants did no trading at all during most of the Relevant Period; that the account statements issued by Defendants to several Pool Participants supposedly reflecting forex trading and profits were false; and that Defendants misappropriated Pool Participants' funds for their own use; in violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

### 3. Fraud by a Commodity Pool Operator

38. Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B), makes it unlawful for CPOs and APs of CPOs by use of the mails or any other means or instrumentality of interstate commerce, directly or indirectly–(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

39. The same conduct that violates 7 U.S.C. § 6b(a)(2)(A)-(C) of the Act also violates 7 U.S.C. § 6*o*(1)(A)-(B)

40.  By the conduct described in paragraphs 1 through 31 above, Defendants also violated 7 U.S.C. § 6*o*(1)(A)-(B).

### 4.  Failing to Register Welther Oaks as a Commodity Pool Operator

41.  Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2021), make it unlawful for an entity or individual to operate as a commodity pool operator without registering with the CFTC.

42.  Defendant Welther Oaks, which was not exempt from registration as a CPO, acted as a CPO and made use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO by operating or soliciting funds for a forex pool that is not an ECP and that engages in retail forex transactions.

43.  Welther Oaks engaged in this conduct without being registered with the Commission as a CPO in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1), and 17 C.F.R. § 5.3(a)(2)(i).

### 5.  Failing to Register Bazzi as an Associated Person of a Commodity Pool Operator

44.  Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), and 17 C.F.R. § 5.3(a)(2)(ii) make it unlawful for an individual person to function as an associated person of a CPO without registering with the CFTC.

45.  Defendant Bazzi acted as an AP of a CPO by actively operating and soliciting funds, securities, or property for the Welther Oaks forex pool, which was not an ECP, in connection with forex transactions.

46.  Bazzi engaged in this conduct without being registered with the Commission as an AP of CPO Welther Oaks, in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6k(2), and 17 C.F.R. § 5.3(a)(2)(ii).

**6.  Bazzi Controlled Welther Oaks and is Responsible for its Actions**

47.  Section 13(b) of the Act, 7 U.S.C. § 13c(b), provides that "[a]ny person who, directly or indirectly, controls any person who has violated any provision of this chapter or any of the rules, regulations, or orders issued pursuant to this chapter may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person."

48.  Ali Bazzi controlled Welther Oaks, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Welther Oaks' act or acts in violation of the Act and Regulations; therefore, pursuant to 7 U.S.C. § 13c(b), Ali Bazzi is liable for Welther Oaks' violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6*o*(1)(A)-(B) and 17 C.F.R. §§ 5.2(b)(1)-(3) and 5.3(a)(2)(i)-(ii).

### 7. Welther Oaks is Responsible for the Actions of Bazzi

49. Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), as well as Regulation 1.2, 17 C.F.R. § 1.2 (2021), provides, that "[t]he act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person."

50. The foregoing acts, omissions, and failures of Bazzi occurred within the scope of his employment, office, or agency with Welther Oaks; therefore, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2, Welther Oaks is liable for Bazzi's acts, omissions, and failures in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii) (I)(cc), 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6$o$(1)(A)-(B) and 17 C.F.R. §§ 5.2(b)(1)-(3) and 5.3(a)(2)(i)-(ii).

51. Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants Bazzi and Welther Oaks will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## II.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

52.  Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendants are permanently restrained, enjoined and prohibited from directly or indirectly:

a.    cheating or defrauding or attempting to cheat or defraud other persons in connection with any commodity futures contracts made, or to be made, on or subject to the rules of a designated contract market or willfully deceiving or attempting to deceive other persons by any means whatsoever regarding the disposition or execution of any such order or contract or any act of agency performed in connection with such order or contract, in violation of Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C);

b.    while acting as a CPO, using the mails or any means or instrumentality of interstate commerce, directly or indirectly to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective

client or participant, in violation of Section 4$o$(1)(A)-(B) of the Act, 7 U.S.C. § 6$o$(1)(A)-(B);

c.    acting as an associated person of a CPO without registering with the Commission in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6k(2), and Regulation § 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2021);

d.    Making use of the mails or any means or instrumentality of interstate commerce in connection with operating as a commodity pool operator without registering with the CFTC in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2021);

53.    Defendants are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.    Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

b.    Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3) for their own personal account or for any account in which they have a direct or indirect interest;

c.      Having any commodity interests traded on their behalf;

d.      Controlling or directing the trading for or on behalf of any other person or entity whether by power of attorney or otherwise, in any account involving commodity interests;

e.      Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and/or

g.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

### III.   RESTITUTION AND CIVIL MONETARY PENALTY

**A.      Restitution**

54.   Defendant's violations of the Act and Regulations merit an award of restitution.  However, this Court recognizes that the court in a related criminal action, entitled *United States v. Bazzi,* 2:21-cr-20348 (E.D. MI) (Criminal Judgment dated May 4, 2022), has ordered that the Defendant pay restitution in the amount of four hundred forty-one thousand two-hundred thirty-one dollars and fifty-three cents ($441,231.53) to the defrauded customers of Defendants in connection with the same conduct at issue in this action.  Accordingly, restitution is not ordered in this action.

**B.      Civil Monetary Penalty**

55.   Defendants shall pay jointly and severally, a civil monetary penalty in the amount of four hundred forty-one thousand two-hundred thirty-two dollars ($441,232) ("CMP Obligation").  If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

56.   Defendants shall pay their CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by

electronic funds transfer, then the payment shall be made payable to the Commodity

Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amc-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Tonia

King or her successor at the address above to receive payment instructions and shall

fully comply with those instructions.  Defendants shall accompany payment of the

CMP Obligation with a cover letter that identifies Defendants and the name and

docket number of this proceeding.  Defendants shall simultaneously transmit copies

of the cover letter and the form of payment to the Chief Financial Officer,

Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street,

NW, Washington, D.C. 20581.

## C.    Provisions Related to Monetary Sanctions

57.    Partial Satisfaction: Acceptance by the Commission of any partial

payment of Defendants' CMP Obligation shall not be deemed a waiver of their

obligation to make further payments pursuant to this Order or a waiver of the

Commission's right to seek to compel payment of any remaining balance.

**D.    Miscellaneous Provisions**

58.  Notice: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

**Notice to Commission:**

Gretchen Lowe
Acting Director, Division of Enforcement
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581

All such notices to the Commission shall reference the name and docket number of this action.

59.  Change of Address/Phone: Until such time as Defendants satisfy in full their CMP Obligation as set forth in this Consent Order, Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten (10) calendar days of the change.

60.  Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

61.  Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related

to this action, including any motion by Defendants to modify or for relief from the terms of this Order.

62.   Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

**THERE BEING NO JUST REASON FOR DELAY**, the Clerk of the Court is hereby ordered to enter this *Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, And Other Statutory and Equitable Relief* Against Defendants Alli R. Bazzi and Welther Oaks LLC forthwith and without further notice.

**IT IS SO ORDERED.**

/s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 13, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 13, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126